**COLLINS, a minor et, Plaintiff-Appellee, v. POTASKY, Defendant-Appellant, and GRIFFITH, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 2164. Decided November 20, 1951.

Pickrel, Schaeffer & Ebeling, Dayton, William H. Selva, of counsel, for plaintiff-appellee.

Marshall & Smith, Dayton, P. Eugene Smith, of counsel, for defendant-appellant, Moe Potasky.

B. S. Keyt, Piqua, for defendant-appellee, James Griffith.

### OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in behalf of the plaintiff-appellee against Moe Potasky, defendant-appellant, entered on the verdict of a jury for $2500.00.

Ten errors are assigned to the judgment which we will consider in detail after a statement of the material facts.

The action was for personal injuries suffered in the late afternoon of September 21, 1949 by the minor plaintiff who was a passenger in the rear seat of a Chevrolet driven by Jerome Hewitt. Riding with him in the front seat was the owner Gird Hewitt. The Chevrolet was struck by a Buick driven by James Griffith. The Chevrolet was moving southwardly on Route 25 near Vandalia. The Griffith car was moving northwardly. Two other cars were involved in the occurrence by reason of which Collins was injured. A Plymouth car, which had been moving northwardly on Route 25, had stopped in front of the south entrance to Popular Hills Cemetery preparatory to crossing the highway to the entrance to the cemetery. The driver of the car had stopped near the center line of the north-bound roadway and was giving an arm signal of a purpose to move to the left. The fourth car was that of defendant-appellant, Potasky, who was driving a Cadillac moving northwardly on Route 25. We hereinafter refer to the plaintiff as Collins, the car in which he was riding as the Chevrolet, to the driver of the Buick as Griffith, the driver of the Cadillac as Potasky and to the Plymouth car as the Plymouth.

There is no substantial variation in the testimony to the effect that the Griffith car had been moving and weaving, more or less, on its right side of the highway up to a short time before the collision; that it struck the Plymouth car as it, the Buick, left its right side of the highway; that it moved on across the road and onto its left or west side thereof and struck the Chevrolet while it was moving on the west side of the highway either upon the improved portion or when it was on the berm to its right of the roadway. The Griffith car struck the Collins car with sufficient power to cause it to strike a tree along side the highway, which impact caused the injuries for which plaintiff sought damages. The collision of the Buick and the Chevrolet also injured the father of the driver, Gird S. Hewitt, who stepped out of his car immediately after it came to a stop and walked ten or twenty steps to the north of the place of the collision and collapsed.

The controversial evidence relates to the position of the Cadillac driven by Potasky and the Buick driven by Griffith immediately before the collision and whether or not there was any contact between the Cadillac and the Buick prior to the collision between the Buick and the Plymouth and the Buick and the Chevrolet.

The plaintiff in his amended petition charged negligence

against both defendants. The plaintiff claims that the verdict is supported by the testimony and particularly that of Griffith that the Buick as it approached the Plymouth, slowed down and a short distance before it had reached the Plymouth had come either almost to a stop or to a rate of speed of not more than fifteen miles per hour, when it was struck from the rear by the Potasky car; that the Griffith car at the time it was struck was on the right or east side of the highway, the front left wheel being about one foot and not more than two feet from the center line, the left wheel two feet and not more than three feet therefrom; that the left front fender of the Cadillac struck the rear left fender of the Buick causing it to leave its side of the road, strike the Plymouth and Chevrolet. It appears that the surface of the road was slippery tending to cause cars to skid.

Defendant, Potasky, claims that his Cadillac did not strike the Buick prior to its impact with the Plymouth and the Chevrolet; that as he approached the Buick for a distance of two hundred feet from the scene of the collision and as it was occurring, he observed it weaving in the road; that he was well over on his right side of the road and that the Buick, after it struck the Chevrolet, turned around came across the road and struck the Cadillac at the left fender with the rear end of the Buick.

At the conclusion of plaintiff's case and at the end of the whole case defendant Potasky moved for a directed verdict in his behalf and later for judgment notwithstanding the verdict, which motions were overruled. Special charges were given before argument at the request of Griffith and Potasky and interrogatories were submitted to and answered by the jury finding that Potasky was negligent in striking the Buick proximately causing the damage to plaintiff. After judgment entered on the verdict, motion for new trial was filed and overruled.

The first three errors assigned are that the verdict of the jury and judgment thereon is contrary to law, the verdict is not sustained by and is against the weight of the evidence. The fourth error assigned is in the overruling of the motion for a directed verdict. The fifth, in refusing to give special written instructions Nos. 4 and 5 to the jury before argument at the request of the appellant. The sixth in overruling appellant's motion for judgment veredicto non obstante. The seventh in overruling appellant's motion for new trial. The eighth in the admission of evidence over the objection of the appellant. The ninth, the damages awarded are excessive and appear to have been given under the influence of

passion and prejudice and the tenth, error in the general charge.

Appellant urges that the fourth and the sixth assignments should be sustained because there is no probative evidence in the record to support any verdict on behalf of the plaintiff and against appellant. This claim is urged upon the proposition that it is a physical impossibility for the accident to have been caused in the manner testified by Griffith, namely; in the striking of the Buick at the left rear fender by the front left fender of the Cadillac. We doubt if it was essential to the plaintiff's case that the jury find that the left front of the Cadillac struck the Buick, provided it found that the Cadillac struck the Buick in the rear.

Appellant urges two phases of the testimony to support his contention. One, that neither Jerome Hewitt, the driver of the Chevrolet or Gird S. Hewitt, riding along side the driver saw the Cadillac at any time prior to the collision. It is contended that had the Cadillac been in collision with the Buick the Hewitts having seen the Buick must have observed the Cadillac. The situation confronting the Hewitts was not such that they were required to observe cars moving on the opposite side of their lane in the highway. Until the Buick was seen to be coming across onto their side of the highway, their attention was not attracted to it. At that time, the Plymouth and the Buick were in their immediate line of vision. They, and particularly the driver, were intent on avoiding the Buick striking them as it skidded across the road towards them. Both say that their eyes were riveted on the Buick. Mr. Jerome Hewitt, the driver said that it charmed him as a snake. It is unusual that they did not see the Cadillac if it was in the position that Griffith places it or where Potasky places it. No reason appears why the Hewitts should have withheld any testimony respecting their observation of the Cadillac although it is as difficult to explain why they did not see the Cadillac at any time because admittedly it was across from the scene of the collision immediately after it had occurred. It is singular that Potasky did not at any time prior to the collision see the Plymouth which was in front of him and in his lane of travel. It may be that he, as the Hewitts, was intent only on the movement of the Buick. The second reason to support these assignments of error is that the version of Griffith as to the manner in which the collision was brought about and the photograph of the Griffith car demonstrate that it was contrary to nature or physical laws, opposed to common knowledge, inherently improbable and inconsistent with the circumstances to con-

tend that the Cadillac struck the Buick so that it would move as it did in striking the Plymouth and the Chevrolet. It is insisted that the photograph, Plaintiff's Exhibit D conclusively supports Potasky's version of the collision, namely; that the Buick struck the Cadillac after the collision with the Chevrolet.

This Court is made up of members who do not have scientific knowledge in the field of mechanical physics, nor is there any testimony in this record supporting the claim of the appellant that the collision could not have occurred as the jury must have found it to have occurred. So many factors are involved in bringing about the movement of the Buick that we would not feel justified in holding that it was an impossibility that the Cadillac caused the Buick to move as it did when it left its side of the road. The Buick may have been moving slightly when struck, the road was slippery. In attempting to guide the Buick it may not have responded as it would have on a dry surface. A skidding car frequently moves in a direction opposite to that in which the steering wheel would ordinarily cause it to move.

Defendant Griffith's Exhibit No. 1 was a piece of metal which it was claimed is a part of the Cadillac car found wedged inside the left rear fender of the Buick. It is claimed that this piece of metal appears on Plaintiff's Exhibit D., a photograph of the Buick taken in a Piqua garage to which the Buick was removed after the collision and found by Griffith on Sunday following the accident which occurred on Wednesday. If this metal is from the Cadillac it is corroborative of the testimony of Griffith that the Buick was struck by some part of the Cadillac at the left rear bumper. If the piece of metal did not come from the Cadillac it would seem that Potasky could have produced evidence to that effect. It was not forth coming. If the Buick automobile was moving and it was struck at the left rear fender by the Cadillac it would not be improbable that the impact would cause it to move to the left toward the Plymouth and the Chevrolet. It is more difficult to visualize the left front part of the Cadillac Striking the Buick where plaintiff's Exhibit D discloses that it was struck. If it did so occur the Cadillac must have been well over onto the southbound lane with the front turned in a northeasterly direction. Manifestly Griffith's statement that the left front fender of the Cadillac struck the rear of the Buick must have been based, in part, on observation made subsequent to the collision.

We cannot hold that as a matter of law there was no evidence supporting the contention of Griffith as to the manner

in which the Buick was struck by the Cadillac, nor, is it so improbable that it so occurred as to require us to hold that the verdict of the jury is manifestly against the weight of the evidence. This disposes of assignments of error Nos. 1, 2, 3, 4 and 6.

Assignment No. 5 is directed to the refusal of the court to give special written instructions to the jury Nos. 4 and 5, requested by appellant before argument. Appellant does not develop this claim in his brief other than to cite two cases, but we have examined the charges and find that the court did not err in refusing to give them. No. 4 omitted the issue of Potasky's negligence and required a verdict in his behalf though he may have been found to be negligent and that his negligence was a proximate cause of the collision between the Buick and the Chevrolet. No. 5 assumed that which was in dispute viz; that Potasky suffered damage to his automobile after the collision of the Buick and Chevrolet.

There was no error in the admission of the metal, defendant Griffith's exhibit No. 1. It was admissible upon the testimony of Griffith as to the time when and the place from which it was recovered from his automobile in connection with the photograph of the Buick showing the presence of an object which could have been the metal, Exhibit No. 1.

We do not find that the damages awarded for the injuries are excessive. Indeed they are modest in view of the nature and extent of the injuries suffered by the plaintiff.

The one error of most substance assigned relates to the general charge of the trial judge and particularly that part wherein he said to the jury that in arriving at the amount of compensation for personal injuries to the plaintiff it could take into consideration mental distress, if any, together with any impairment and ability to earn money in the future, if any; expenses for medical care, if any, not only for medical care already received by plaintiff, but any medical care or surgery care in the future that will be necessary to restore plaintiff to health.

It is urged that there was no prayer for damages for medical expenses incurred or to be incurred nor any claim of impairment of future earning capacity and further that if any medical expenses had been incurred they should not be included in an award to the plaintiff because he as an unemancipated minor, was not liable to them and therefore could not recover for them.

Appellant cites Traction Company v. Woolley, 6 O. N. P., N. S., 444, to effect that it is prejudicial error to charge the jury without qualification that it should include in damages

expenses sustained by reason of an accident where the petition does not aver any such expenses and the evidence does not tend to support it. There was no evidence in the instant case of any amount of expenses incurred by reason of the medical attention given plaintiff and none as to any future expenses which might be incurred for such purpose, nor, was there any proof of impairment of future earning capacity of the plaintiff. The petition averred that plastic surgery would be required to correct and prevent permanent disfigurement of plaintiff's face, but the court specially instructed the jury to disregard this averment.

Upon the evidence the jury had no basis whatever upon which it could award damages for medical expenses and impairment of earning capacity and as to both elements the trial judge qualified such an allowance by the term "if any." So applying this charge there is no probability that the jury could have based any part of the damages awarded upon expenditure, present or future for medical services or for loss of future earning capacity because no such proof was before it. The amount of the verdict does not reflect an excessive award. It is to be presumed that the jury obeyed the injunction of the trial judge and it does not reasonably appear that the jury awarded any sum representative of the elements of damages which we have just discussed.

The case is close on the weight of the evidence. We do not hold otherwise, but the issues of fact were for the jury. The case was well tried and the trial judge fully and ably charged the jury.

No error is predicated on the failure of the trial judge to submit a form of verdict for plaintiff against defendants jointly. In that connection we refer to **Dash v. Fairbanks, Morse & Co., 49 Oh Ap 47.**

We find no error assigned well made.

The judgment will, therefore, be affirmed.

WISEMAN and MILLER, JJ, concur.

### ON APPLICATION FOR REHEARING

No. 2164. Decided December 4, 1951.

### OPINION

By THE COURT:

Submitted on application of appellant for rehearing on the claim that we did not, in our original opinion in consider-

ing the general charge, give application to the case of Traction Co. v. Woolley, 6 O. N. P. (N. S.) 444, affirmed by the Supreme Court without opinion. **77 Oh St 642.**

We recognized the infirmity in the charge as given, but, considering its effect on the verdict, reached the conclusion that it did not prejudice the rights of appellant. That, of course, is the test. In the cited case the improper elements of damage were charged and included without qualification. Not so in the instant case and it is plain that the jury could not have observed the qualifications and awarded any damages to the plaintiff in the particulars concerning which the charge is objectionable.

The application will be denied.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.